IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| JAMES GLEN JONES, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ANDREW M. SAUL, Commissioner of ) <br> the Social Security Administration, ) <br> ) <br> Defendant. ) | Case No. 4:18-cv-377-GMB |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff James Glen Jones appeals from the decision of the Commissioner[1] of the Social Security Administration denying his application for a period of disability and Disability Insurance Benefits ("DIB"). Jones timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The parties have consented to the dispositive jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). Doc. 9. Accordingly, the court issues the following memorandum opinion.

Jones was 46 years old on the date an Administrative Law Judge ("ALJ") reached an opinion on his application. Tr. at 13 & 21–22. His past work experience

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 5, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Saul is substituted for Nancy Berryhill as the proper defendant in this case.

includes employment as a chicken hatchery worker and rock mason. Tr. at 21. Jones claims that he became disabled on April 25, 2014 due to issues with his back, high blood pressure, rheumatoid arthritis or gout in his joints, asthma, and bilateral broken ankles. Tr. at 83.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520 & 416.920; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i) & 416.920(a)(4)(i). If he is, the claimant is not disabled and the evaluation ends. *Id.* If he is not, the Commissioner next considers the effect of all of the plaintiff's physical and mental impairments in combination. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). The impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii). If the claimant's impairments fall within

this category, he will be found to be disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e) & 416.920(e). RFC is an assessment, based on all relevant evidence, of a claimant's remaining ability to work despite his impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent him from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). If the claimant can still perform his past relevant work, the claimant is not disabled and the evaluation ends. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, age, education, and past work experience to determine whether he can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform, but once that burden is met the claimant must prove his inability to perform those jobs in order to be found disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Jones met the insured status requirements of the Social Security Act through December 31, 2018. Tr. at 13. She further determined that the plaintiff had not engaged in substantial

gainful activity since his alleged onset date of April 25, 2014. Tr. at 13. According to the ALJ, Jones had the following impairments that are considered "severe" based on the requirements set forth in the regulations: "degenerative disk disease, degenerative joint disease, asthma, and obesity." Tr. at 13. She also determined that Jones' gout, hypertension, and bilateral ankle fractures are non-severe. Tr. at 14. The ALJ found that Jones' allegations of hip pain were not supported by evidence of a medically determinable physical or mental condition, and that his complaints of musculoskeletal pain were a result of his obesity. Tr. at 14. The ALJ found that Jones' severe and non-severe impairments, separately and in combination, neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 14. The ALJ determined that Jones had the RFC to perform work at a sedentary level of exertion as defined in 20 C.F.R. § 404.1567(a) with additional restrictions. Tr. at 16. The ALJ elaborated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations addressed herein. He can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. He can frequently balance and stoop, occasionally kneel and crouch, but never crawl. He can constantly reach, handle, finger, and feel. He should avoid exposure to hazardous environments such as unprotected heights.

Tr. at 16.

According to the ALJ, Jones is unable to perform any of his past relevant work, he is a "younger individual," and he has a "limited education," as those terms

are defined by the regulations. Tr. at 21. She determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." Tr. at 21. Even though Jones cannot perform a full range of sedentary work, the ALJ determined that there are a significant number of jobs in the national economy that he is capable of performing, such as assembler, table worker, and machine operator feeder/auto grinder. Tr. at 21–22. The ALJ concluded her findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from April 25, 2014 through the date of the decision." Tr. at 22.

## II. STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining (1) whether there is substantial evidence in the record to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard

permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm the decision if it is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions on whether a claimant is disabled, the nature and extent of a claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e) & 416.927(d). Whether the plaintiff meets the listing and therefore is qualified for Social Security disability benefits is a question reserved for the ALJ,

and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record to support it.

### III. DISCUSSION

Jones argues that the ALJ's decision that he has the RFC to perform sedentary work is not supported by substantial evidence. In general, RFC is a determination of the work that a claimant can perform in spite of his or her limitations. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). The RFC is the ceiling, or the maximum that a claimant is capable of doing given his or her medical condition. *Id.* When there is no allegation of a physical or mental impairment and the record contains no medical evidence that such an impairment exists, the ALJ should assume that that there is no impairment of that functional capacity. *Id.* at *3. When establishing an RFC for any claimant, the ALJ must explain how the evidence supports the RFC. Specifically, SSR 96-8p requires as follows:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can

7

perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. . . .

The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence. In instances in which the adjudicator has observed the individual, he or she is not free to accept or reject that individual's complaints solely on the basis of such personal observations. . . .

The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

SSR 96-8p, 1996 WL 374184, at *7.

To the extent Jones encourages the court to reweigh the medical opinions or substitute its judgment for that of the ALJ, the court declines the invitation. The court's limited scope of review precludes the type of review that Jones is seeking. However, Jones does assert two specific errors that the court is capable of reviewing. First, he argues that the ALJ improperly weighed the medical opinions of Dr. Rainer and certified registered nurse practitioner ("CRNP") Connell. Second, he argues that the ALJ improperly applied the Eleventh Circuit's pain standard to his allegations of disabling pain.

## A. Medical Opinions

Jones challenges the ALJ's failure to give substantial weight to the opinion of his treating physician, Dr. Rainer. Additionally, Jones suggests that the ALJ would

have found him to be disabled if she had adopted the limitations described by CRNP Connell.

### 1. *Dr. Rainier*

The ALJ afforded "some weight" to Dr. Rainer's opinion. The ALJ found that the doctor's "statement that the claimant was unable to perform gainful employment at any exertional level [was] contradicted by his opinion that the claimant's impairments were no greater than moderate in severity and that the claimant could perform the exertional demands of light work." Tr. at 20.

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the medical source's examining and treating relationship with the claimant, the evidence the medical source presents to support the opinion, the extent to which the opinion is consistent with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d) & 416.927(d). Furthermore, good cause exists for an ALJ not to give a treating physician's opinion substantial weight when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3)

treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583–84 (11th Cir. 1991) (holding that good cause exists where the opinion is contradicted by other notations in the physician's own record).

As discussed above, opinions on whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner." 20 C.F.R. §§ 404.1527(e) & 416.927(d). The court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative since it is the ALJ who bears the ultimate responsibility for assessing a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c).

Dr. Rainer provided an opinion in response to a list of questions sent to him by Jones' attorney. Tr. at 365–66. Dr. Rainer stated that he treated Jones for "prolapsed lumbar intervertebral disc, degenerative disc disease, asthma, and osteoarthritis of knees." Tr. at 365. He described the severity of Jones' symptoms as moderate and opined that he would be limited to the light range of exertion. Tr. at 365. Dr. Rainer then stated that he would not expect Jones to be capable of

engaging in gainful employment at any exertional level. Tr. at 366.

The court finds that substantial evidence supports the ALJ's finding that there was good cause to afford only "some weight" to Dr. Rainer's opinion that Jones is not capable of any gainful employment. Dr. Rainer's opinion that Jones is disabled is not entitled to any defined amount of weight because this is a legal conclusion rather than a medical opinion. Additionally, Dr. Rainer's opinion is necessarily conclusory in as much as it is reflected on a form with questions that often restricted him from providing an open-ended explanation of his medical opinion. Tr. at 365–66. And even where the form permitted an explanation, Dr. Rainer provided only a list of ailments, responded "yes" or "no," or left the question blank. Additionally, the opinion is internally inconsistent. On the first page of the form, Dr. Rainer stated that Jones' condition is moderately severe and limits him to the exertional level of light work. On the second page, however, Dr. Rainer opined that Jones is disabled and not capable of pursuing any gainful employment. Jones attempts to explain this discrepancy by offering that the conditions alone are only limiting to the level of light work, but the combination of the conditions and the resulting pain preclude gainful employment. Doc. 13 at 13. However, even if the court were to accept Jones' post-hoc explanation, reversal on that ground would intrude into the province of the ALJ, who is solely responsible for determining the claimant's RFC. For all of these reasons, and considering the entire record before the ALJ, the court concludes that

there is substantial evidence to support the ALJ's decision to afford only some weight to Dr. Rainer's opinion.

## 2. *CRNP Connell*

The ALJ afforded "limited weight" to CRNP Connell's opinions because "she is not a licensed physician or acceptable medical source and her opinions regarding the claimant's physical limitations are well beyond the expertise of a nurse practitioner." Tr. at 9.

As addressed previously, the ALJ must consider several factors in determining the weight to be given to a medical opinion. Employment in the medical field does not in and of itself entitle an individual to provide a medical opinion. Acceptable medical sources are those—like physicians and psychologists—who are qualified to establish the existence of a medically determinable impairment. 20 C.F.R. § 404.15.13(a)(2016); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Only an acceptable medical source may give a medical opinion as to the claimant's limitations. *Id.* at *2. Non-medical sources may be considered to the extent that they help to show the severity of the impairments or the claimant's level of functioning, but they may not establish the existence of an impairment. *Id.* The regulations do not require the ALJ to assign any specific weight to the opinion of a non-medical source. *Anteau v. Comm'r of Soc. Sec.*, 708 F. App'x 611, 613 (11th Cir. 2017).

As mentioned above, Nurse Connell is a CRNP. Under Social Security

regulations, she is not an acceptable medical source. *See* SSR 06-03p, 2006 WL 2329939, at *1 (listing acceptable medical sources, including "Licensed physicians (medical or osteopathic doctors)," but not CRNPs or other nurses). Therefore, her medical source statement alone cannot establish the existence of Jones' impairments. But her opinion may assist the ALJ in determining the severity of Jones' impairments or his level of functioning, and there is no set amount of weight that the ALJ must give to her opinion. Here, the ALJ determined that Connell's medical source statement was entitled only to "little weight."

The court finds that substantial evidence supports the ALJ's determination to afford only little weight to this opinion. Connell stated that Jones would be able to sit for one hour without interruption and able to walk or stand for 20 to 30 minutes without interruption. Tr. at 368. She believed that during an eight-hour workday he would be able to sit for four hours, stand for two hours, walk for one hour, and lie down for one hour. Tr. at 368. Connell's statement thus reflects more severe limitations than any other medical source's opinion. For example, approximately one year prior, Dr. Iyer, the consultative examiner, opined that Jones had limitations in "standing, walking, climbing steps, bending, lifting, twisting, and carrying," but noted that he had no limitation in "sitting, reaching overhead, handling, hearing, and speaking." Tr. at 257. Dr. Iyer also found Jones to have 5/5 strength and full range of motion in most joints. Tr. at 257. Approximately one year later, Dr. Rainer opined

13

that Jones had only moderate impairment and the capability to perform light work. Tr. at 365–66. Because Connell is not an acceptable medical source and because her opinion is not supported by the remaining medical opinions in the record, the court finds that substantial evidence supports the ALJ's decision to afford only little weight to her opinion.

**B.     Pain Standard**

Jones also contends that the ALJ erroneously concluded that his subjective complaints of pain were not entirely credible. Doc. 10 at 42. The Commissioner responds that the ALJ had substantial evidence on which to discredit the complaints. Doc. 13 at 27.

The Eleventh Circuit established a pain standard for an ALJ's evaluation of a claimant's subjective allegations of disabling pain. Under that standard, subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if the testimony is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, the pain standard "requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir.

2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Under Social Security Ruling 16-3p,

> [i]n evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2017 WL 5180304, at *10 (2017). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [the reviewing court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Id.*

The ALJ determined that Jones met the first requirement of the pain standard

by providing evidence of an underlying medical condition. *See Dyer*, 395 at 1210. The ALJ then found that "the claimant's medically determinable impairments could reasonably be expected to produce some pain, symptoms, and functional limitations." Tr. at 30. However, the ALJ determined that Jones did not satisfy the second or third elements of the pain standard and found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at 30. The ALJ explained that

> [i]n his Disability Report (Exhibit 2E), the claimant alleged disability due to lower back problems, high blood pressure, possible rheumatoid arthritis or gout in joints, asthma, and bilateral ankle fractures. At the hearing, the claimant testified he has been disabled since April 2014. He stated that since his alleged onset date, he attempted to work at Wal-Mart but had to quit after 3 days due to his back problems. He testified he had degenerative bone disease in his back and despite Flexiril, hydrocodone, and epidural injections, continued to have constant back pain and muscle spasms. He stated his back pain radiated down into his right leg and that he was unable to bend, stoop, squat and climb ladders. He stated he had gout in his elbows and arthritic knee pain and that due to his various medical problems, had 2 to 3 bad days per month and sometimes was unable to get out of bed. He testified that he had difficulty bending his elbows due to gout and had gout flare-ups approximately 3 times per year that lasted up to a week. He testified he was never pain free and that on a 1 to 10- pain scale, had 7 to 8 pain levels even with medication. He stated he also had to lie down, recline and use a heating pad for pain management. He testified he could lift and carry 10 pounds and had difficulty lifting above his head due to his elbow and back problems. He stated he was unable to walk a city block and could stand 10 to 15 minutes and sit 20 minutes. He testified that during an 8-hour work day, he had to lie down 6-7 hours daily. He stated he was unable to perform household chores, shop and go to the mall and that although his medications made him drowsy, he was able

to concentrate and focus must of the time. . . .

In terms of the claimant's musculoskeletal problems, medical records from Cherokee Health Clinic and Cherokee Medical Center covering the period August 2015 through February 2015 document treatment and/or follow-up for right elbow pain and tenderness secondary to bursitis and degenerative joint disease. However during this treatment period musculoskeletal examinations demonstrated good mobility and muscle strength throughout all extremities (Exhibits 2F, 3F, and 4F).

When consultatively examined by Anand Iyer, M.D., in March 2015, the claimant's complaints included gout and back pain. Dr. Iyer noted the claimant had difficulty getting on and off the examination [table] and was unable to squat. Range of motion testing revealed limited range of motion of the lumbar spine and knees but normal range of motion of all remaining major joints. Additional clinical findings included morbid obesity and bilateral lower extremity pitting edema[.] However, Dr. Iyer found the claimant to have normal gait station, full 5/5 strength testing throughout all extremities, and normal bilateral grip strength and hand dexterity. Straight leg raising testing was negative and the claimant had no motor, sensory or neurological deficits. Dr. Iyer's diagnostic impression was history of asthma, history of back pain possible secondary to lumber degenerative joint disease, history of bilateral knee pain possibl[y] secondary to osteoarthritis, history of possible eczema, history of obesity, history of gout, and history of bilateral elbow pain possibly secondary to gout. In a functional assessment, Dr. Iyer further opined that the claimant might experience some functional limitations with activities involving standing, walking, climbing steps, bending, lifting, carrying, and twisting but should have no limitations with sitting, reaching overhead, handling, hearing, and speaking. In a May 2015 supplemental report, Dr. Iyer discussed the claimant's manipulative abilities and reported the claimant had no abnormalities and full mobility of the hands that his ability to handle, finger, and feel was normal (Exhibits (1F and 4F).

In May 2015, the claimant presented to Etowah County Department of Health with complaints of left knee pain but x-rays of the left knee revealed only mild and early degenerative joint disease. Medical records from Cherokee Health Clinic covering the period September 2015 through March 2017 document treatment, including lumbar

17

epidural injections for lower back pain and lumbar muscle spasms secondary to prolapsed lumbar disc disease. However, during this treatment period it was often noted the claimant's back pain was stable with medication. No recommendations have been made by any of the claimant's treating sources for surgery, biofeedback, physical therapy or referral to a pain clinic for debilitating pain and only conservative treatment has been provided which is inconsistent with the presence of moderately severe or severe pain (Exhibits 8F, 9F, and 12F). . . .

In a March 2017 medical questionnaire, Ryan Rainer, M.D., a treating physician at Cherokee Health Clinic, noted a diagnostic impression of prolapsed lumbar intervertebral disease, degenerative disc disease, asthma, and osteoarthritis of the knees. He further indicated these impairments were moderate in severity and opined the claimant would be limited to the exertional demands of light work. However, Dr. Rainer then states the claimant experienced pain and based on his physical condition was unable to perform gainful activity at any exertional level. In a March 2016 physical Medical Source Statement, April Connell, CRNP, opined that the claimant could lift and carry 10 pounds continuously, 11 to 20 pounds frequently, and 21 to 50 pounds occasionally. She opined that during an 8-hour workday, the claimant could sit 4 hours, standing, 2 hours and walk 1 hour. She opined the claimant could occasionally climb ramps and stairs and push/pull with the upper extremities; frequently reach, handle, finger and feel; and could occasionally operate motor vehicles and use lower extremities for operation of foot controls. Additional limitations included occasional balancing, stooping, kneeling, and crouching; no crawling; no climbing ladders and scaffolds; and occasional exposure [to] moving machinery, humidity, wetness, vibration and noise (Exhibit 11F).

Also negatively affecting the claimant's allegation, he testified his medications made him drowsy yet the medical evidence contains no complaints of medication side effects and treatment records from the Cherokee Health Clinic specifically indicate the claimant had no medication side effects. The claimant testified he took opiate pain medication on a daily basis yet pharmacy records reflect only sporadic refills for pain medication (hydrocodone). It is also noteworthy that when seen at Cherokee Health Clinic in January and March 2017, three months prior to the hearing, the claimant actually reported he required pain medication on a rare basis.

Tr. at 17–18.

The court finds that there is substantial evidence to support the ALJ's finding that Jones' complaints of disabling pain are not fully credible. As well summarized by the ALJ, Jones' medical records support a finding that he has some limitations from his musculoskeletal pain, asthma, and obesity. However, Jones has not consistently reported to his doctors the type of disabling ailments, side effects, and issues he alleged during the pendency of his Social Security disability application, during his hearing with the ALJ, or during this appeal. The ALJ specifically articulated the adequate reasons that he discredited Jones' testimony. This is what the law requires. *See Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988). There is no requirement that the record be completely devoid of evidence upon which the ALJ could have drawn the opposite conclusion. Where, as here, there is a clearly articulated finding that the claimant is not credible and there is substantial evidence to support that determination, the court will not disturb the ALJ's finding. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

## IV. CONCLUSION

For these reasons, the court finds the Commissioner's decision is supported by substantial evidence and in accordance with the applicable law. It is therefore ORDERED that the decision is AFFIRMED.

A final judgment will be entered separately.

DONE and ORDERED on September 17, 2019.

/s/ Gray M. Borden
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE